Mr Justice Story
 

 delivered the opinion of the Court.
 

 This is a writ of error to the circuit court of. the district of Ohio. The Bank of the United States brought a joint action against William Steele, William Lytle, and Thomas D. Carneal '(the defendant in error), upon a promissory note dated at Cincinnati on the 22d of-August. 182.0, whereby Steele promised to pay Carneal or order, at the office of discount and deposit of the Bank of the United States, at Cincinnati, the sum of .$11,¿63 in sixty days after date; .which, note was afterwards successively indorsed by. Carneal and Lytle, and was discounted by the bank, and dishonoured.át its-maturity.
 

 The de’claration is for money lent arid advanced, and the suit is authorized to be brought .in this form jointly against all the parties to the note, by a statute of Ohio. The process was served. upon Steele, and Lytle, but returned, “ not served” upon. Carneal. . Judgment was afterwards duly obtained against Steele and Lytlé, and a scire /acias issued according to another statute of Ohio against Carneal, to which he appeared, dnd pleaded the general issue of nOn assumpsit, at. the January - term of the court in 1825. The .cause was then regularly continued, until July term' 1827,. when by leave of the court he pleaded, as a
 
 further
 
 plea, .the receipt of certain real estate, of Lytle by the bank,
 
 after the commencement qf Ike suit,
 
 in satisfaction of the debt-due upon the note, and prayed judgment if the plaintiffs. their action ought
 
 further to. have or maintain
 
 against him. To this pleá there was a replication, and issue to the
 
 *548
 
 country; and at June term 1828, the cause was tried and a verdict was found, and judgment thereupon entered for the defendant; A bill of exceptions was taken at the trial, upon which the questions arose which have been discussed at the bar, and upon which the opinion of the Court is now to be delivered.
 

 The first question is, whether the pléa óf satisfaction, so as above pléaded, is a substitution for the - former plea of non assumpserunt, so: as to. displace it entirely, or whether it is an auxiliary plea, So that both issues were property before. the jury, at the trial upon which they might pronounce their verdict. The latter is contended for by the defendant in error, and was supported, by the judgment of the circuit court.
 

 It is admitted that a plea
 
 puis darrien continuance
 
 is always pleaded by way of substitution-for-the former plea, on which no proceeding is afterwards had
 
 (a)
 
 . The present plea was.ir fact pleaded after the last continuance, although it is nóf so stated in the plea. It differs from a technical pléa of puis,darrien continuance, only, in this circumstance that the satisfaction is alleged to have been
 
 after the.cot).-meneement of the suit)
 
 instead of
 
 after the last continuance
 
 of the suit. In principle, however, they do not differ, since each Of them requires the same commencement,and concliision.; that is, instead of •
 
 áctio non,
 
 generally ¿'-each must be pleaded with the ■ prayer of
 
 actio, non ulterius
 
 Habere; &c, and the judgment must follow the. prayer, and is repugnant ter and incompatible with that of a general judgment upon matters.-befóte the suit brought.. As therefore,; the same judgment' cannot be rendered upon the género! issue, and upon such a plea of matters arising after the suit brought, it is difficult to perceive- how -they can be united. But it is the. less necessary to rest any absolute decision upo» this point, because we are all, of opinion; that the judgment below ought to be reversed upon the exceptions taken to the. -merits.
 

 The court below ruled* that the evidence adduced at .the
 
 *549
 
 trial was not sufficient in law to charge the defendant as in-dorser. That evidence was supposed to be deficient in two respects; 1st, that there, was not á proper demand of payment of the note óf 'thé maker, at the time when it became’ due; and 2d, that due -notice was not given of the non-payment 'to the defendant as indorser.
 

 Upon the first point the evidence is, that on the day when the note bécame due, the note was in the bank at Cincinnati, the bank being the holder thereof, and. it being payable there* and that after the usual banking hours were over, it was delivered to a notary by the officers of thé' bank for protest, they informing him at the time, that there were no funds, there for ihe payment of the note. We are all of opinion, that'-this;was a sufficient proof of a due demand Of payment: Where a note is payable at a :bank, it ;is not necessary to. make any personal demand upon ihe maker elsewhere. It is his duty, to be át the bank within the usual hours of business to pay the same, and if he omits so to do, and á demand is there made of payment by the holder, within those hours, 1 and it is refused or néglectéd to bé made, the holder is entitled to. maintain his action for such dishonour. But where the bank is itself the . holder of the note so payable, no; formal, demand, is necessary ti> be made, of payment. The maker has the whole period of the usual banking hours to pay it', and if, hé doés not pay. it nrithin. those hours, it is.equi-. valent to a demand, and refusal of payment on his part, and ’ •the nóte ought not to be delivered out for protest until after those hours are passed. If the bank has funds ;of the maker in its hands,; that might furnish a defence to . a suit- brought '.for non-payment. But. this is properly matter of defence to be. shown by the party sued,- like anyothef payment, ahd not matter to be disproved, by .the. bank, by .negative evidehée. This doctrine was recognised by this Court in Fullerton
 
 vs.
 
 The Bank of the United States, at the last term.
 
 1 Peters’ Rep.
 
 604. 617.
 

 Then as to the other point of notice, the fact's áre, that the defendant, Cárnéal, resides in Campbell county, in the state of Kentucky. The note became due on .the-24th of, October 1820, and on the next day the notary puf a sealed
 
 *550
 
 notice of the. protest and non-payment into the post office . in. Cincinnati, directed “ To Thomas D. Carneal, Campbell county, Kentucky,” the postage, on .which was not paid. At that time CarneaFs residence in Campbell county was without. the limits'of any post town, and about two miles from Cincinnati, across the river.Ohio; and his residence was well known to the officers of the bank, as well as the» postmaster at Cincinnati. The county seat of Campbell county is Newport, where there is a .post office, about three miles distance from CarneaFs residence, the river. Licking being between them; and there is also another post office at Covington, below the river Licking, about two miles distance -from his residence.- In October 1820, the mails from Cincinnati passed once a íyeek only through Covington, and three times a week through Newport. - Carneal was. in the habit of receiving letters at the Newport office, as well as at the offices in C9-vington and Cincinnati. He was in the habit of , receiving all the letters directed to him at Cincinnati, at the office in that place, and had given orders to the postmasters’to detain all such letters there until he called for them.- He visited •Cincinnati very frequently and almost daily, having bus.i-, ness and being a director of a bank located at that place; The postmaster was’in the habit of sending letters directed to him, in Campbell, county, by the Covington mail, whenever he observed, the address, unless, as was sometimes the cáse, he called for letters at the office before the Covington mail was sent. But other letters, directed generally to Campbell county, when the place of residence of the party, was unknown, wire sent by .the. postmaster to-Newport.' The notary himself, when he put the present notice into the post office at Cincinnati, supposéd that Carneal' received all his-letters at that;office. The first mail which left Cincinnati for Newport, after the .deposit of this notice, was oh the 26th of October;' and the first which left for Covington was on the 28th of the same month. .There is no evidence, in the case that the letter in question went either by.the mail of the 26th to Newport, or by that of the 28th to Covington. ,. The defendant, Carfteal, hás not produced the letter, if it was ever
 
 *551
 
 received by him; and the. circumstances afford a strong presumption that it might have been received at Cincinnati.
 

 . Such is a summary of the material facts5 upop which this Court is called to pronounce, whether there was due- dilb* gence in the transmission of the notice to the defendant. The latter having asked the court below to instruct the jury as in case of a non-suit; arid the court having acceded to his. request, that ipstruction can be maintained only upon the supposition that there was no contrariety of evidence as to.the facts which ought to have been left to the jury ; and consequently, every inference fairly deducible from the facts which afforded a- presumption of due notice, ought to: be. made.in favpur of the plaintiffs.
 

 'It is difficult to lay down any universal rple, as to what is due-diligence in respect to notice to indorsers. Many cases must be decided upon their own particular circumstances, however desirable it may be, when practicable, to lay down
 
 á
 
 general rule.- When notice is sent by the mail, it is suf-fiént to direct it to the town where the party resides, if it is a post town. If it is not, then to the post office or post.town nearest to his .residenqe, if known. But the rule, as. to the nearest post office, is not of universal application,- for if the party is in the habit of receiving his letters -at . a moré distant post office,, of through a more circuitous route, and that fact is known to the person sending notice, notice sent by the latter mode will be good. And where the party is in the habit of receiving his letters at various post offices,, to suit his own convenience or business, it may be sufficient to send it to either. Thé .object of the law in all these cases is to enforce the transmission of the notice by such a route as that it may reach the party in a reasonable- time. This doctrine is fully recognized by this Court in the case of The Bank of Columbia us. Lawrence, decided at the last term. 1
 
 Peters's Rep.
 
 578.
 

 It has been objected that the direction of this letter to Campbell county gerierally was not sufficient, but that i.t ought to have been directed to the nearest-office, for.óther-wise it might happen, that it would be sent to a post office, which, though the county seat, might. be very distant from
 
 *552
 
 the residence of the party. Whether a mere direction to the county without' farther specification, where the party does not reside in any town therein, would be sufficient in all cases and under all circumstances, we do not think, it necessary to decide. That question may well be left until it is necessary in judgment. Rut where, 'the description is general, if it is in fact sent to the proper post office,, or if, after due inquiry .it is the only description within the reach of. the person sending the notice, we think' it may be safely declared to be sufficiently certain, and that a different doctrine would materially clog the circulation of negotiable - paper. . We think the description in the present case was in every view sufficient. There was no mis-direction ; for Carneal did live in Campbell county.. His actual residence was well known to the postmaster ¿t Cincinnati, and the description did not and could not mislead him. If the direction was observed, It would be sent to Covington, or would be delivered, at Cincinnati. If not, it would be sent at farthest to Newport.
 

 Then, was the notice in fact duly given, or. duly, sent through the proper post office We are all
 
 of
 
 opinion that it w.as. The post office at Cincinnati was almost as near to the party’s residence as that at Covingtori. The difference is too trifling to afford any just ground of preference; and Cincinnati was the place where he was most likely to receive the letter promptly, since it was the place óf his business and of his habitual, and almost daily resort. If it had never been transmitted, from that.office at all, we.are not prepared to say, that under such circumstances, the notice left there was not of itself sufficient, since 'the party'was known there and his description unequivocal. It does not appear in point of fact, that it ever left that place for any other post office* If it did not, the strong presumption is, that it.wasihere delivered to the party. But iffit was sent to Newport, how can the Court say that it was mis-sent."? The party was in the habit of receiving letters there ;, it was the county seat; and the mail by that route was three times a. Week, and that by Covington only-once a week. The-probabilities. therefore, in favour of. an early receipt of the let
 
 *553
 
 ter from this circumstance might fairly balance any in the opposing scale, from the increase.o'f distance.and-the.intervention of the river Licking. And in fact the letter would at that time have reached Newport, two-days earlier th'ari it would have reached Covington. We think it would be inconvenient and dangerous to lay down any rule, that the person sending a notice, ought under such circumstances to direct the letter to the nearest post office, We think that the notice would have been good by either route; indeed good, if left at the post office at Cincinnati,
 

 A suggestion has been made at the bar, that a letter to the. indorser stating the demand and dishonour of the note, is not sufficient, unless the party sending it also informs the indorsér that he is looked to for payments But when such notice is sent by the holder, or by his order, it necessarily implies such a responsibility over; 'For what other purpose could it* be sent? We know, of no rule that requires any formal declaration to be made to this effect. It is sufficient, if it may be reasonably inferred from the nature of the notice.
 

 For these reasons we are all of opinion, that the judgment of the circuit court ought to be reversed; and the cause remanded, with directions tó award a venire facias jde noyo.
 

 (a)
 

 Stephens on
 
 Pleading, 81. 83.
 
 Comyn’s Dig.
 
 Abatement,,!.' 24.